The Honorable Chris Thomason State Representative Post Office Box 1216 Hope, AR 71802-1216
Dear Representative Thomason:
I am writing in response to your request for my opinion on the following question:
 Can an ambulance service company providing emergency response and transport services to a municipality and/or a county under a franchise agreement dispatch local ambulance units from an out of state communications center?
You have provided the following background information:
 It is my understanding that the ambulance company proposes to receive all calls for assistance in their out-of-state communication center. The communication center would then contact local ambulances to answer the emergency call.
You have further provided me with a copy of a newspaper article that reports that the City of Hope and Hempstead County are considering allowing the referenced private ambulance service to receive and to process 911 emergency calls in its dispatching center located in Minden, Louisiana. According to the newspaper account:
 Representatives of Pafford Ambulance Service made a presentation to the [Hope] Board [of Directors] on the effectiveness and operating procedures of their dispatching center in Minden, La. They currently handle 1,600 calls per month from five parishes in northern Louisiana, with trained emergency medical dispatchers (EMDs).
 According to Pafford, EMDs follow an approved protocol to handle emergency calls of all types. . . .
The newspaper reports that the Hope Board of Directors has approved the proposal and that the Hempstead County Quorum Court has yet to do so.
Apparently no provision of Louisiana law precludes a private ambulance service of the type described from fielding and processing initial 911 calls.
RESPONSE
In my opinion, the arrangement you describe would not be permissible under the terms of the Arkansas Public Safety Communications Act of 1985, A.C.A. § 12-10-301 et seq. (Repl. 1999 Supp. 2003).
The following definitions, set forth at A.C.A. § 12-10-303 services bear on your question:
 (8) "Dispatch center" means a public or private agency which dispatches public or private safety agencies but does not operate a 911 public safety answer point;
* * *
 (13) "911 public safety communications center" means the communications center operated on a twenty-four (24) hour basis by one of the operating agencies defined by this subchapter and as designated by the chief executive of the political subdivision which includes the public safety answering point and dispatches one (1) or more public safety agencies;
 (14)(A) "Operating agency" means the public safety agency authorized and designated by the chief executive of the political subdivision to operate a 911 public safety communications center.
 (B) Operating agencies are limited to offices of emergency services, fire departments, and law enforcement agencies of the political subdivisions;
 (15) "Private safety agency" means any entity, except a public safety agency, providing emergency fire, ambulance, or emergency medical services;
 (16) "Public safety agency" means an agency of the State of Arkansas or a functional division of a political subdivision which provides fire fighting, rescue, natural, or human-caused disaster or major emergency response, law enforcement, and ambulance or emergency medical services;
 (17) "Public safety answering point" means the location at which 911 calls are initially answered[.]
(Emphases added.)
As reflected in subsection (8) of this statute, a "dispatch center" may be a private entity but it may not "operate a 911 public safety answer point" — a term defined in subsection (17) as "the location at which 911 calls are initially answered." As established in subsection (13), those initial calls must be fielded at a "911 public communications center," which is a public facility, manned on a 24-hour basis by "one of the operating agencies defined by this subchapter." Subsection (14) defines the term "operating agency" to mean a "public safety agency" selected by the political subdivision's chief executive from among its "offices of emergency services, fire departments, and law enforcement agencies."
It should be apparent from the foregoing that the legislature has designed the 911 system to ensure that the initial 911 call for emergency services be fielded by a trained public employee of the political subdivision's existing emergency service providers.[1] See Ark. Op. Att'y Gen. No. 90-100 (opining that because "911 officers are specified personnel of a public safety agency and are paid employees of the operating agency subject to the authority of the chief executive through that agency," 911 officers are entitled to the statutory tort immunity set forth at A.C.A. § 12-9-301). In my opinion, the legislature in all likelihood adopted this system with the intention of locating in an appropriate public agency the ultimate responsibility to field and to process calls for emergency services within the political subdivision. Perhaps the legislature felt that this degree of mandatory participation by the political subdivision in fielding 911 calls would be consistent with the city or county's public obligation to provide a speedy response when its citizens call in emergencies. Whatever the intention, according to the express terms of the subchapter, no matter how convenient the service proposed in your request might be to the citizens of Hope and of Hempstead County, I do not believe such a system would comply with existing law in that it would call for a private entity to field initial calls for 911 assistance. Moreover, I believe this conclusion would apply regardless of whether the private facility's initial answering point were located within the political subdivision to be served or in some other state.
Having offered this opinion, I should note that the Code does provide for a political subdivision under appropriate circumstance to authorize locating a public safety answering point outside the political subdivision's boundaries and subject to another entity's direct control. Specifically, A.C.A. § 12-10-305 in pertinent part:
 (a)(1) The chief executive of the political subdivision may designate the 911 public safety communications center of another political subdivision either to serve his or her political subdivision as public safety answering point only and retain one (1) or more dispatch centers or to serve both public safety answering point and dispatch functions.
 (2) This designation shall be in the form of a written mutual aid agreement between the political subdivisions and will include the stipulation of the fair share of funding to be contributed by the political subdivision being served to the political subdivision operating the 911 public safety communications center.
* * *
 (4) If such a designation and mutual aid agreement has been made, an additional 911 communications center may not be created without official termination of the mutual aid agreement.
 (b) Any 911 public safety communications center established pursuant to this subchapter may serve the jurisdiction of more than one (1) public agency of the political subdivision or, through proper agreements, more than one (1) political subdivision.
 (c) No provision of this subchapter shall be construed to prohibit or discourage in any manner the formation of multiagency or multijurisdictional public safety answering points.
This statute clearly authorizes one political subdivision by mutual aid agreement to route 911 calls originating in its jurisdiction to another political subdivision's 911 public safety communications center, including the latter's public safety answering point. See, e.g., Ark. Op. Att'y Gen. No. 2001-111 (discussing the operation of precisely such a unitary system by agreement between the City of Hope and Hempstead County). However, nothing in this statute authorizes a political subdivision, whether by mutual aid agreement or otherwise, to create a multiagency or multijurisdictional public safety answering point whose "operating agency" is a private corporation. I appreciate that A.C.A. § 12-10-305(c) is extremely liberal in its expression of approval of multiagency or multijurisdictional public safety answering points. However, in my opinion, the Code is unequivocal in directing that any such delegation of a political subdivision's responsibilities be restricted to the public safety answering point of another political subdivision, not to a private entity. In short, I believe only the legislature could authorize an arrangement of the sort proposed in your request.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] For a description of the considerable training required of 911 operators, see A.C.A. § 12-10-306.